# SUPREME COURT

OF THE

## STATE OF IOWA

AT

## DES MOINES, MAY AND SEPTEMBER TERMS, 1920.

---

JOHNSON OIL REFINING COMPANY, Appellant, v. FEDERAL OIL & SUPPLY COMPANY, Appellee.

SALES: Calling for Quotations—Effect. A written request by a prospective vendee for quotation of prices, and a compliance therewith by the prospective vendor, followed at once by an order by such vendee for a *definite* quantity, does not constitute a contract of sale.

*Appeal from Polk District Court.*—THOS. J. GUTHRIE, Judge.

MAY 15, 1920.

ACTION to recover damages for a breach of contract to

1

ship oil.  At the conclusion of plaintiff's evidence, the court directed a verdict for the defendant.  Plaintiff appeals.—
*Affirmed.*

*John L. Gillespie,* for appellant.

*Stipp, Perry, Bannister & Starzinger,* for appellee.

GAYNOR, J.—This is an action to recover damages for an alleged breach of contract to deliver ten cars of fuel oil, at $1.75 per barrel.  The plaintiff is an Illinois corporation, and located near the city of Chicago.  The defendant is an Iowa corporation, doing business at Des Moines, Iowa. Each handles oil products.  On the 3d day of November, the plaintiff wrote the defendant the following letter, properly addressed to and received by the defendant:

"We are interested in receiving *quotations on fuel oil,* gasoline, for shipment into Illinois and Indiana, also for shipment into eastern points.  If you have anything to *offer* for immediate shipment, we shall appreciate your quotations by wire."

On November 5th, the defendant answered:

"We have your letter of the third asking for quotations, etc.  *  *  *  and we are very pleased to enclose one of our sales sheets showing what we have to *offer.*  *  *  *  In regard to fuel oil, we can quote you $1.75 for Illinois and Indiana delivery.  *  *  *  We have a good supply of these commodities, and would be very glad to open some business with your company.

"P. S.  We are asking our Mr. Wolfe who is located in the Peoples' Gas Building, to call on you at the earliest possible opportunity.

"Note:  All quotations are for immediate acceptance and subject to change or withdrawal without notice.  All agreements are contingent on strikes, accident and other delays unavoidable or beyond our control.  Any tax imposed by the government must be added to our price."

With this letter, or attached to it, were the sales sheets referred to in the letter, showing quotations of prices on oil commodities, including the commodity referred to in plaintiff's letter.

On the 6th day of November, plaintiff wired the defendant:

"Your letter fifth. Enter our order ten cars fuel oil one seven five, barrel group, three points, Oklahoma. Wire when can ship."

On the same day, they followed this telegram by a letter, properly addressed to and received by defendant, as follows:

"Please deliver the following as per instructions indicated, and charge to Johnson Oil Refining Company, Chicago Heights, Chicago, Illinois. Ship to Johnson Oil Refining Company, Chicago Heights, Illinois, by C. I. I. delivery, terms 1-10-30, F. O. B. Group three points. Mail invoice Chicago Heights, Illinois: 1-8000 Gal. Tank Car 26-30 Fuel Oil at $1.75 per barrel, Group three points. Confirming wire. If shipment cannot be made on day requested above, notify us when you will ship."

On the 8th day of November, 1917, the defendant answered:

"We have your wire asking us to enter your order for ten cars Fuel Oil at $1.75, and we have been checking over our supply with our refinery, and are as yet unable to say if we can enter your order. We have sold pretty heavily the last few days, and we will know, no doubt, by tomorrow at which time we will advise you. Thanking you for your desire to give us some business, we are," etc.

On the 10th day of November, defendant wrote the plaintiff as follows:

"As per our letter to you yesterday, we have checked our orders for fuel oil, and we regret very much to find that we cannot accept your order for ten cars as we are so heavily sold that it would be useless to take on additional business. We are very sorry, indeed, to turn down this initial business from you, and hope to be more fortunate next time. Assur-

ing you we appreciate your desire to patronize us, we are," etc.

These letters are the only direct communications between the plaintiff and defendant touching the purchase and sale of the oil in question, and it goes without saying that these letters fail to show an acceptance on the part of the defendant of the order of November 6th, and, therefore, no contract. In fact, they affirmatively show that the order of November 6th was refused. If nothing further appeared, there would be no occasion for proceeding further in the discussion of the case. Plaintiff, however, claims that, before the letters hereinbefore set out, rejecting the order, were received by it, the defendant had, in fact, accepted the order, and, therefore, became bound to perform, by delivering to the plaintiff the oil called for by its order of November 6th. The only evidence upon which the plaintiff relies to show this is found in letters written by the defendant to the Mr. Wolfe referred to in defendant's letter of November 5th, enclosing the quotations. These letters are as follows:

"Nov. 5, 1917.

"Mr. E. B. Wolfe, Chicago, Illinois.

"Dear Sir: We enclose copy of letter received from the Johnson Oil Company, together with our reply. Won't you please make a trip to see them and endeavor to secure their business. *I was wondering* if their inquiry was to find out our prices, as I believe they are largely tank car dealers themselves."

"Nov. 8, 1917.

"Mr. E. B. Wolfe: I have your letter of the 7th regarding the order for ten cars given us by Johnson Oil Refining Company. Of course you understand that I am waiting for Roxana to cover me on this transaction, and I have not heard from them, although I wired them this morning as follows: 'Have you entered our orders fuel oil totaling twenty cars, wire answer.' I have not acknowledged this order yet to the Johnson people as I do not want to make myself liable until I hear from Roxana. I suppose on ac-

count of W. O. being in Tulsa, there is some delay in hear-
ing from them.  If you can throw any light on the matter, I
would like to hear from you."

"Nov. 12, 1917.

"Mr. E. B. Wolfe:  I enclose a copy of letter received
this morning from the Johnson Oil Refining Company to
which I am making no reply until I can hear from you.  I
would like to know if you took this order under the name
of the Great Lakes Petroleum Company or under the name
of the Federal Oil & Supply Company.  It is impossible for
us to fill this order, and I feel sure that you understand the
situation, and that you will protect us as much as possible
in your conversation or in your correspondence with the.
Johnson people from now on."

"Nov. 13, 1917.

"Mr. E. B. Wolfe:  Enclosed find copy of letter just re-
ceived from Johnson Oil Refining Company, together with
copy of our reply.  Did you have any correspondence with
them regarding this order, or was your transaction with
them all verbal?  If any letters passed between you, please
send me copies and greatly oblige."

The letter, referred to above, we take it, is a letter writ-
ten by the plaintiff to the defendant on November 10, 1917,
as follows:

"We acknowledge receipt of yours of the 8th with refer-
ence to our order for ten cars of fuel oil at $1.75, noting
carefully what you have to say in this connection.  We re-
spectfully refer you to your letter of Nov. 5th wherein you
made us a flat offer on fuel oil at $1.75 for Illinois and In-
diana delivery, also in this letter you state you had a good
supply of this commodity and desired to open some business
with us.  Also in regard to the above, your Mr. Wolfe, in
Chicago, called us by phone and asked us for shipping in-
structions.  We asked him to have all cars started for
Chicago Heights, C. & E. I. delivery.

"The above is conclusive evidence of your acceptance of

the order, and we therefore look to you for early fulfilment of the obligations, and hope to have your advices in the very near future that all ten cars are coming forward.

"Awaiting to hear from you," etc.

The record discloses that Mr. Wolfe had no authority to bind this defendant by accepting any orders; that all the authority he had touching the sale of oil was simply to submit orders to the company for its acceptance. It affirmatively appears that he had no authority to bind the company by accepting any order for and in behalf of the company.

This presents the entire record upon which the plaintiff predicates its right to recover damages on account of the failure of the defendant to ship the oil called for by its letter and telegram of November 6th. The only question presented here is whether or not there was a completed, binding contract between the plaintiff and defendant, on which the plaintiff may predicate a claim for damages for a failure to perform. It would seem almost unnecessary to discuss the record, in order to make it plain that this record does not show the existence of a binding contract, or to show that the minds of the parties did not meet upon the proposition contained in plaintiff's letter of November 6th. The first letter discloses simply a request for quotation of prices. This request was complied with. The plaintiff thereupon assumed to order a definite quantity of the articles held by the defendant for sale, in conformity with its prices, as evidenced by the sales sheet. There is nothing to show that defendant ever agreed to sell to plaintiff any definite number of gallons of oil at the price fixed in its sales sheets. The most that can be argued on this proposition is that the defendant said it had a good supply of these commodities. It is evident that, in the letters written by the defendant to this agent, Wolfe, it did not have in its mind the purpose of accepting the order, and the answer to the inquiries indicated that they were skeptical as to whether or not plaintiff's inquiry as to prices was in good faith.

The second letter indicates a purpose not to accept until they received assurance that they could supply an order, if accepted. The third was written after defendant had definitely notified plaintiff that they would not accept the order, and was simply a tentative inquiry as to whether or not anything had been done which might possibly bind the company, other than was evidenced by the conduct of the defendant itself. The same was the purpose of the fourth letter. There certainly is nothing in these letters to Wolfe that indicates that the defendant had accepted the order of November 6th, and there is certainly nothing in the record which shows that Wolfe, even if he had authority to act for the defendant, had done anything to bind the defendant to ship the oil called for by the order of November 6th.

It requires no citation of authority to show that no action for a breach of contract can be maintained until the existence of the contract is first shown. There is such a total failure of evidence to establish the contract relied upon that no verdict for the plaintiff could be sustained. The court was, therefore, right in directing the jury to do what it did do, and its action is, therefore,—*Affirmed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.